Case number 19-3193-96, William Schmitt et al. v. Frank LaRose. Oral argument is not to exceed 15 minutes per side. Mr. Flowers for the appellant. May it please the court, Ben Flowers on behalf of Secretary LaRose, I will do my best to reserve three minutes for rebuttal. Both parties agree that Ohio may limit ballot access to initiatives that come within the scope of the initiative power. The only question is whether Ohio imposes an unconstitutional prior restraint when it funnels ballot access disputes to mandamus instead of direct de novo appeal. It is not about the due process clause. Schmitt's waived that argument. It's not about Anderson Burdick either. He's never made that argument. The only question is whether the laws affect a prior restraint. Did Judge Sargis say that it was a prior restraint? He did not. In fact, even in the preliminary injunction ruling which rules on the First Amendment, he rested on something resembling Anderson Burdick. So in my introduction, when I say it's not about that, what I mean to say is my friend on the other side makes none of those arguments. The only argument he raises is prior restraint, and that argument fails. Though I'm happy to talk about due process or anything else because I think those arguments fail as well. But returning to the prior restraint argument that I think is made, it fails for both doctrinal and practical reasons. The doctrinal reasons, there are two of them. The first is that the First Amendment does not even apply to laws that govern the process by which laws are made. But I recognize that that question implicates a circuit split, and so I want to focus on the second doctrinal problem, which I think would allow this court to resolve the case in our favor without wading into the circuit split. And that problem is this. Even if the First Amendment applies to ballot access procedures, assume for the sake of argument it does, even then, those procedures are subject to Anderson Burdick analysis, not prior restraint analysis. And the reason is as every circuit that's addressed the issue has recognized, there is no First Amendment right to have one's issue placed on the ballot. To be sure, the initiative process can implicate protected speech. So if an issue doesn't make it onto the ballot, it can be harder to engage in a signature-gathering campaign or to speak out in favor of or against the initiative. But there's no right to place the initiative itself on the ballot. And if that's true, then ballot access procedures are not prior restraints because the only thing they restrain in the sense of the court. Well, what if the procedure was explicitly content-based? The law allows initiatives. Ohio allows initiatives. However, the county board has the exclusive right to decide whether they want to put it on the ballot. And there's no standard. It's simply do they like it or not. So two answers to that. The first is that I don't think that would be a good... The first is what? Two answers. The first is that while that would be a foolish provision, I do think states could do that for the reasons that Judge Tatel gives in Marijuana Policy Project and Judge McConnell gives for the en banc Tenth Circuit, which is that the process for making law is not subject to the First Amendment. But I want to assume for the sake of argument that it is. Even then, that law that you mentioned would be subject to Anderson Burdick, and the question would be how that one would come out.  Counsel, I'm sorry. You're saying that if the decision whether or not to let it go, assuming it has all the signatures and all the rest of it, that if the decision was solely based on the board's view of the contents, the merits of the contents, whether it's a good idea and nothing else, that there would be no First Amendment issue in that? There would not be, and let me explain why. The reason why is it's a process of creating legislation when you enact an initiative. It would be like something saying that a senator who wants to bring the bill to the floor has to get the approval of the Senate president. He wouldn't have a First Amendment claim, and the people wouldn't have a First Amendment claim either, because the First Amendment does not bear on legislation. And I would refer your honors to Marijuana Policy Project. Okay, but then why did you just say you were going to assume for the sake of argument that the First Amendment applies? Well, so I have two answers to your question. The first, we do make the argument that it doesn't apply. I want to suggest that this case be resolved on the second problem, which is that even if it does apply, I'll assume that for the sake of argument, Anderson Burdick would be the relevant test, not the prior restraint doctrine, and we prevail under Anderson Burdick for two reasons. The first is a procedural one, which is that they've waived the argument. The second is that even if it applies, even if you overlook the waiver, we win. Mandamus I know in the federal courts is an extreme remedy. You almost never get it. But it's not the case in state court. These are a staple of election season. They happen constantly, and you can look to cases that we cite. North Main, Comprocob, Citizen Action, DeBrasi, Youngstown, all of those are cases in which part initiative proponents brought and won Mandamus suits, getting their initiatives placed on the ballot, and they did that. Those are all recent cases. That's not even going back in the decades and decades we've been doing this. So the question in Anderson Burdick is the burden on speech versus and how it compares to the state's interests. What would the standard of review be if the individuals who want this initiative had sought a writ of Mandamus? What would be the standard for reviewing whether or not this initiative met the standard of being administrative or not? The standard is effectively de novo. Now, let me explain that. In Mandamus, it's a clear legal right, clear legal duty, and no adequate remedy at law. But when you look at these cases, when they assess whether there's a clear legal right to be on the ballot, they don't pay any deference to the boards. They simply assess the matter. Is there any authority case saying that, or is this just your reading of what's happening in those cases? I suppose a little bit of both. It's reading the cases. If you look at Justice Fischer's dissent in Comprocob, he notes that they're not always consistent with how they describe the standard, and that in some cases they do describe the standard as paying no deference. But the most important thing is just on the ground, even if they called it de novo and then didn't give de novo review, I don't think that would matter. The important thing is what are they, in fact, doing? And, in fact, what you get with Mandamus is guaranteed review at any court in the state, including the Supreme Court of the state, the seven leading jurists in our state, guaranteed review that's effectively de novo on an expedited basis, and it's very successful. As I mentioned, those cases are all cases in which litigants have prevailed in obtaining Mandamus relief. But aren't there other cases where they say that you haven't established a clear right and there's no abuse of discretion? They talk about abuse of discretion, but in the legal context, of course, if you misapply the law, you've abused the discretion. And my friend on the other side cannot identify one case, and I'm not aware of one, where the standard that they announced altered the outcome, where it would have mattered if they deferred or applied de novo. In every single one of those cases, it's as though they're applying de novo, every single one. I can't find a single exception. Is there also some avenue of going to the trial court for relief? We think there is. Explain to me what that would be and how that's different than doing their – I know, obviously, writ of Mandamus is a different procedure, but what's the relief you're seeking ultimately? Would it be the same thing in trial court as you would seek from the Supreme Court? So the main difference is there are two ways to go to the trial court, we think. One's clear. That's by statute. So in the revised code, I believe it's 2731.01, there's a statutory guaranteed right to seek Mandamus in the trial courts. But putting that aside, we believe you could seek a state court's injunctive relief. If you look at a case called Myers, this is rarely brought, but in Myers the Supreme Court affirmed an injunction ordering a county clerk not to put an issue on the ballot. Now, granted, that was by an opponent of an initiative, not a proponent, but there would be no reason to treat them differently. The reason Mandamus is what people generally seek is that, number one, because of the expedited nature of these things, usually you can't bring it far enough in advance to get the injunctive relief plus an appeal. Second, frankly, Mandamus is better. Again, you get guaranteed relief in the Supreme Court of our state. And if you look at these opinions, they're not summary dispositions. They are very thoroughly reasoned opinions assessing these issues. And I can't find one where the standard of review mattered, and we pointed that out in several briefs, I believe, and still they've not done that. So it's not the extreme remedy it is in federal court. Now, in federal court, Mandamus is a very different animal than in state court. Briefly note the practical issues with the prior restraint doctrine that my friend argues. We note that every state that we're aware of has some sort of preclearance process for putting issues on the ballot. If there's a First Amendment right to put an issue on the ballot, then every one of those laws is a prior restraint. Many of them would fail the prior restraint analysis. That would require striking down these laws. What would that lead to? Overcrowding on the ballots, which decreases democratic participation. The reason for that is there's 50 issues on the ballots. You can't possibly inform yourself about all those in this process. This is sort of a difficult situation because you're arguing something that has nothing to do with what Judge Sargas decided, right? Well, I would prefer not to, but my friend on the other side is making a prior restraint doctrine completely. I can touch on due process. And the main due process. You need to address what he ruled on. So he ruled exclusively on due process. And I do think that to the extent you agree with that, they've still waived the argument. And so the proper course would be to reverse because they've waived the only argument that he made. Well, you're saying Judge Sargas did not do a First Amendment analysis. In the preliminary injunction opinion, he did. But when he got to the permanent injunction, he did not. It is strictly procedural due process. And even if he made a First Amendment, it was never prior restraint. But to answer your question about due process, at the adequacy stage, Clevel V. Soglin, the Seventh Circuit, I believe it was 2018, the Seventh Circuit held that mandamus is usually an adequate process for protecting against the misapplication of state law. We're not aware of any federal court that said in contexts like this, mandamus is insufficient. So great respect for Judge Sargas, but I believe he erred here in holding that this wasn't adequate. And part of it was based on a misunderstanding of the law, I think. He cites Article 2, Section 1G of our Constitution saying correctly that that section guarantees a direct appeal to individuals who are opponents of a ballot initiative being placed on, but not proponents. That provision doesn't apply here. We're talking about municipal initiative legislations. Those are governed by 1F. 1G relates exclusively to statewide ballot initiatives. So I think there was a misunderstanding there. So what are you saying? They have to go with mandamus also? Opponents and proponents both need to seek an extraordinary writ, yes. It might be prohibition instead of mandamus, but it's effectively the same thing. The district court utilized this Anderson Burdick case in his analysis of ballot access restrictions in connection with the preliminary injunction order, and then switched to due process analysis in deciding whether to enter a permanent injunction. Is that the way this all evolved here? That's correct, though. My friend on the other side disputes that. Disputes what? That the district court provided an Anderson Burdick analysis in regard to the preliminary injunction order? No, although I think we win Anderson Burdick moving on to the permanent injunction. I don't know if you do or not. That's what we're here to try to— Well, that's what I was getting at before. Yes. So let me ask you this. What's your take on Anderson Burdick and the criteria set forth there in relation to the issue that brings us here? So if you look at the Anderson Burdick test as announced last year in the CITL case in this circuit, they said if the burden on First Amendment or 14th Amendment rights is minor, then it's a close to rational basis test. The burden here is minor. Mandamus relief, as I've noted, is effectively de novo in any court in the state, including the highest court in the state, guaranteed review, and it works. Again, North Main, Compracop, Citizen Action, DeBrasi, Youngstown, all of those are recent cases in which people have prevailed. So the burden is not great, and it's certainly not greater than a direct de novo appeal, which is what Judge Sargas suggested the state should provide instead. And so all we need to show is a rational basis. And the process of screening out and providing for review in this time-tested way that the state's been utilizing for decades protects the right to get on the ballot while at the same time making sure that we don't see overcrowding and things of that nature. Does it matter that you have the exact same petition submitted to different municipalities and they decide it different ways? It doesn't, because that's also true in the federal courts, of course. District courts make mistakes, and we have courts of appeals to correct them, and we have mandamus to correct boards of elections that erred. And frankly, if they had sought a writ of mandamus, they would have gotten it. This was a legislative ballot initiative in all likelihood. It should have been placed on the ballot, and there's no indication that failed. But eight days after the board told them they would not be placed on the ballot, instead of seeking relief in the state courts, as they were required to do, they filed a federal lawsuit. Now, I know you're out of time here, but let me just ask you. Your argument is that there's no First Amendment interest that the plaintiffs have that would permit them to prevail here. Is that pretty much what you're saying? Well, we have two arguments. The first is that the First Amendment doesn't apply to the case. The second is that even if it does, we satisfy Anderson-Burdick or prior restraint or any other standard that might plausibly be applied. All right. You're saying that the First Amendment doesn't apply. The plaintiffs, unless I'm misstating it, are arguing that the First Amendment doesn't apply in these circumstances because it would constitute a prior restraint. So neither one of you are trying to enshrine the First Amendment argument here. That being the case, why wouldn't it be appropriate for us to try to decide this based on Anderson-Burdick, which is the test utilized by the district court for evaluating ballot access restrictions that the district court utilized when it decided to issue the preliminary injunction? Well, I think the court rightly—two answers. The first is that it's waived. The second is that I think the court rightly— Well, I forget whether you think it was waived, but well, okay, I'll let you— So the district court properly moved away from Anderson-Burdick at the permanent injunction stage. It, I think, sensed the problem with the argument. And the problem, as I noted, is you compare the burdens that a law imposes on the First Amendment versus the benefits to the state. And if the burdens are minor, you're close to rational basis review. That's the CITL case from this court last year. And the burden on First Amendment is exceptionally slight because you get a guaranteed appeal, in effect, to the Supreme Court of our state. The seven leading justices in our state will review your complaint. It's effectively de novo. Parties often succeed. And so that's not a burden. And if it is a burden on First Amendment rights, it's no greater burden than a direct appeal. I personally would rather have a writ of mandamus to our Supreme Court than an appeal to a single common pleas court in Ohio, and probably not time for a further appeal. So the burden's slight. The rational basis is that this procedure guarantees that we can prevent the concerns with overcrowding that would come from putting every single initiative on the ballot, which is what my friend says. On the other side, we should be doing. And it also, frankly, protects the reliance interests of Ohio citizens. If all these things were going on the ballot and then later being held unconstitutional, they might organize their businesses or their lives around laws that they think apply but are ultimately held by courts not to. And so Ohio's interest in funneling and making sure there's some review, and that can be done quickly, more than meets the rational basis. Okay. And you're saying there's no due process argument, no 14th Amendment due process for us to be concerned about because there's not a protected interest that the plaintiffs have in terms of the way they are requesting these ballot access procedures. Well, we do make that argument, but I think the easier way to resolve the due process case is on the second part of the test. Even if there's a protected interest, the mandamus relief provides adequate process, and it would actually create a circuit split to hold otherwise. Clevin last year held that that's an adequate process for protecting against misapplications of state law. And I think that's why my friend on the other side concedes that Judge Sargis was unjustified in relying on the due process doctrine, though they deny that he did at the same time. But you don't deny that the plaintiffs have a protected interest that they're pursuing, or what's your position on that? We do deny that, but I'm saying even if you disagree with us on that, the easier way to resolve the claim is on adequate process. In terms of whether they have a right, whether they have a protected interest, the Chief Justice's opinion when he was Judge Roberts in the D.C. Circuit in Universal City is directly on point. In that case, movie studios had the ability to claim royalties, but they had to timely submit requests, basically, under federal law. And what he said is that unless you follow that procedure, unless you use that procedure to actually make a timely claim, you don't have a right at all. So is that an exhaustion position, exhausting your state remedies? I'm not sure I follow. No, it's not quite that. The point is that when state law creates the process for claiming a state right, like the right to get on the ballot, you have to utilize the state process before you even get the right. So, for example, if I have an initiative that I never submit, I don't have a right to put that on the ballot. Well, do you have to pursue the mandamus? Are you arguing you have to pursue the mandamus? Right. The procedure for getting on the ballot under Ohio law is you first submit it to actually the county clerk or auditor, ultimately the board, and then a writ of mandamus if you disagree. And did you raise this below? No one raised the due process argument below because it was never briefed and they never brought a due process claim. Judge Sargassous-Ponte raised that at the hearing in the permanent injunction point. Not by name. He references the facts of Matthews v. Eldridge, and that, I think, is how he ended up at due process. But no one ever briefed that below. All right. Thank you. We'll hear from the opposition. Good afternoon, and may it please the Court. Good afternoon. General Flowers has made a weak case for the plaintiffs. He claims we've conceded virtually everything and waived several things. And I'd just like to respond to that real quickly. We did make First Amendment arguments. We made a prior restraint argument, which is a First Amendment argument. And we also made the rest of the First Amendment argument, which is if you make content-based distinctions, you have to comply with strict scrutiny, which is a part of the Anderson-Burdick formula. So we made those arguments to the district court. I'm sorry. You're saying if you make a content-based distinction, you have to comply with what? Strict scrutiny. If you make a content-based – Anderson-Burdick, the analysis basically says if you have a severe restriction on speech in the ballot access context, you have to comply with strict scrutiny. Okay, but you're arguing that as part of Anderson-Burdick. You're not arguing it as part of Freeman and prior restraint. Well, it is. It is a part of that also. As this Court has recognized in the Deja Vu case, this Court said – that was the adult business case with the licensing. This Court said that if you have a prior restraint, under the First Amendment, you – I'm speaking, of course, not to the Court. I'm speaking just to the plaintiffs and litigants in general. You have two arguments. One of the arguments is procedural safeguards under Freedman against Maryland, which was the center of our case. The other is if you've got a prior restraint, you've also got strict scrutiny if it's a content-based prior restraint. So both of those are part of the doctrine against prior restraint. Okay, so are you – I just want to get this straight. Certainly, Your Honor. You're saying that you argued to Judge Sargis that you win under Burdick and you – Anderson – and you win under prior restraint. We argue we win under strict scrutiny, which is the part of Anderson-Burdick. So you asked for strict scrutiny, but you did not argue that it was a prior restraint? We did argue it was a prior restraint. Okay, so you did argue prior restraint. All the time, yes, Your Honor. Okay. That was the center of our case. Yes. And what was the basis of – what did Judge Sargis decide? What do you say Judge Sargis decided? I think basically he agreed with our argument. In the first preliminary injunction, he's clear that's a First Amendment ruling. He says it in the opinion. He speaks to Anderson-Burdick, as Judge Clay pointed out. It's in there. In the permanent injunction, which he released first, he basically says, I'm incorporating everything in the preliminary injunction. I'm just making it permanent. So by reference, all of that comes into the permanent relief. And then he starts talking about procedure. The reason he was doing that is because the doctrine against prior restraints incorporates procedural due process. That's where the procedural safeguards come from. If you look at the Friedman case back in 1965, it's an old case. Go back to 1965, the First Amendment was really only being litigated for about 20 years, so the court was still developing the precedent. But the Friedman case says, hey – Are you saying that – I'm sorry. Are you saying that all initiatives are prior – are potentially – okay. Are you saying that you have a right to put all initiatives before the people? No, Your Honor. Okay. Are you saying that all initiatives get the due process requirements of Friedman? It depends on what the state does with the initiative. If the state imposes what Ohio does here, which is a content-based discretionary executive decision, that's exactly what Ohio does, the Supreme Court – the Ohio Supreme Court makes that clear. The Board of Elections has discretion. The Portage County Board of Elections here said that. We are exercising our discretion. I'm wondering if you're telling Judge White something a little different from what your papers say. I thought that both sides said that Anderson-Burdick test does not apply in this case. No, Your Honor. Anderson-Burdick – At least back before the district judge when he had the preliminary injunction before him. Yes, Your Honor. At that time, is it your position, a statement that you've maintained, you've tried to analyze this based on Anderson-Burdick all along? No, Your Honor. Our center was prior restraint. We also argued even without prior restraint, you have to apply strict scrutiny. I thought you were saying that you're not going to evaluate the issue based on Anderson-Burdick. You just wanted to have the case decided on the basis simply of prior restraint. Either one, Your Honor. If you look at our complaints, either one. Our complaint says in one of the counts, the law fails strict scrutiny, which is a part of Anderson-Burdick. Anderson-Burdick says this court is – Anderson-Burdick is kind of a balancing test. Not if the restriction is severe, Your Honor. And this court has said if it's a – That's what has to really be decided by the court, how severe it is. My argument is – Because in most instances, you'd expect it to be a balancing test because it has this multi-factor test that you have to look at all the various variables. I'm sorry, Your Honor. I keep interrupting. I don't mean to – Go ahead. The Anderson-Burdick says first step, you must decide whether there is a severe burden. If there is a severe burden, strict scrutiny. If there is not a severe burden, something less, balancing. Then we get into some lesser scrutiny or rational basis. This court has said if it is content-based, it is severe, which means under Anderson-Burdick, if you've got a content-based restriction, you apply – And I'm not telling the court what to do. I'm just, again, speaking to you, General. You apply strict scrutiny. What about the Ohio double subject case? Yes, Your Honor. Okay. Is that content-based? No, Your Honor. This court said – and I agree. This court said all we've got to do is count. One, two. So that is not a content-based restriction. Okay. The administrative versus legislative. Okay. Is that content-based? Certainly, Your Honor. Is it always content-based? It may even be viewpoint because as the Supreme Court said in the Mansky case, which was the polling place case where the election judges got to pick and choose. Oh, you're wearing political insignia. You can't wear that. The Supreme Court said in that case, you're asking the election judges to make legal determinations. And when you're making legal determinations, that's content-based. And the court even says that goes as far as to be completely unreasonable. But whether something has two subjects can certainly be far more complicated and nuanced than going one, two. Much more, exactly. I mean, that's the problem. Okay, but you just said it's not content-based. Which the distinction between administrative and legal is content-based. Whether an initiative involves more than one subject is not simply counting one, two. One has to make an evaluation based on the face of it, whether it's really one or whether it's really two. So how do you distinguish that from this? I agree, Your Honor. There are shades of gray even with the counting numbers one and two. But I must confess, it's a lot easier to count the two than it is to distinguish between administrative and legal and whether something is within the constitutional power or unconstitutional. So is this a challenge? Isn't this an applied challenge to this particular initiative? It's both, Your Honor. We made both a facial challenge to the Ohio system, which is why we brought the... Right, but isn't it sort of a little heavy-handed to enjoin all application of this process when you might have situations that are... I mean, what is wrong with this process for the rest of the questions that need to be decided? What's wrong with this process for whether you have enough signatures? What's wrong with this process for something that clearly goes beyond the power of initiative? Your Honor, we're not saying that. Well, we're not saying that you cannot require a sufficient number of signatures. We're not saying you cannot apply any content-neutral criteria. You can. The law is clear, and the states have so held. So our distinction is this goes beyond concrete content-neutral criteria. But what's the injunction that was entered? It's against using content-based discretion to pick and choose amongst the initiatives. The exact same thing that you had mentioned. It's having Portage County saying, oh, this decriminalization ordinance is administrative, and then having, what's Toledo? I think it's Summit County. Having Summit County saying it's not. They came to completely different conclusions. There were at least three other municipalities in Ohio, and I believe more, Your Honor, that came to the exact opposite conclusion. I'm sorry. No, go ahead. I'm just wondering, why didn't you go to the Supreme Court to get the resolution of the conflict? Well, I was just telling co-counsel that a lawyer in Columbus who does a lot of election law stuff did just that. At the same time, we went to federal court. He had a case that came up before the Franklin County Board of Elections, and the Franklin County Board of Elections kept the initiative off the ballot, and he took it up to the Ohio Supreme Court, and he lost. The reason is, who knows? Pardon my French. It's a roll of the dice in the Ohio Supreme Court. Was there a written opinion in that case? Yes, Your Honor, there was. I can find it for you, and I can submit it after the argument if you want. Was it de novo review? Never. It's never de novo. Do you disagree with? Oh, vehemently. That's the opinions of the Ohio Supreme Court. Justice Fischer has said this is crazy. And even a majority of the justices have said the decisions that the election boards are authorized to make, the content-based subject matter decisions, are difficult even for the Supreme Court to make. And then the court goes on to say, and you know what? It's not de novo review, so it may very well be we disagree, but we've got to defer to their discretion. The Ohio Supreme Court has said that numerous times, Your Honor. I can't see why this lawsuit wouldn't be resolved in a way that we would go back to a process that would involve the decisions of the county boards of election being reviewed by the Ohio Supreme Court if there's adequate process. And here, if we disagree with your First Amendment argument and decide that this whole matter is subject to content-neutral balancing, it would seem that the appropriate avenue to resolve this dispute would be in the Ohio Supreme Court, because depending upon whether you are representing the proponent or the opponent of the ballot initiative, you would either seek a writ of mandamus or a writ of prohibition in the Ohio Supreme Court. And that's happened, as I understand, that's happened before in these kinds of cases. So why, and from a due process standpoint, that would be an adequate process, it would seem. So why wouldn't we vacate the order of the district court and let the parties resolve this through the avenues that exist, which would be the appeal or would first be to seek a writ of mandamus or a writ of prohibition with the Ohio Supreme Court? Two responses, Your Honor. First off, the process as it exists would not satisfy the doctrine against prior restraints or the First Amendment, because the Freedman v. Maryland case and this court in Deja— What's prior restraint here? You keep saying prior restraint, prior restraint. What are you talking about? Yes, Your Honor. According to this court, the doctrine against prior restraint, I've got it in Deja Vu, the Supreme Court. This, I'm sorry, the Sixth Circuit identified a prior restraint exists. You're not going to give us a strip club case, are you? And that's the crazy thing, Your Honor. I mean, even with a strip club, the government cannot do these things. But the state, they're telling us they can do it with initiatives. In my opinion, that's got it completely backwards, because I think initiatives are much more important than strip clubs. But in the Deja Vu case, this court said a prior restraint exists when the exercise of a First Amendment right depends on the prior approval of public officials. And that's exactly what we have here, Your Honor, and that's the prior restraint. Wait a minute. Why is the prior restraint a problem? If you don't like the decision, you go to the Ohio Supreme Court. They get paid very well to take care of these state-related election matters. And they do a fine job, except even at their own admission, it's not de novo. And even though the Board of Elections could be wrong, if it's not an abuse of discretion, they're not going to set it aside. Well, that gets into whether it's an administrative decision or a legislative decision that involves discretionary decision-making. And that's an issue that the Supreme Court of Ohio can evaluate as well, right? They've done it like eight times, and they still haven't come to a conclusion, Your Honor. Does that make it unconstitutional? If it's unclear. The Supreme Court addressed this exact problem in Mansky, which was the ballot polling place case. The state of Minnesota argued what's allowed and what's not. We can figure all this out as we go along. And Justice Roberts, it was a facial challenge, just like ours. And Chief Justice Roberts came back and said, no, that chills speech. If you're just figuring it out as you go along, it's the chill on speech. That's the reason we allow facial First Amendment challenges. That's the danger. I think I heard you saying that if a state Supreme Court is rendering ambiguous decisions as they try to figure out what something means, and so you really don't know, that's unconstitutional. That it's not a matter of the executive branches, they have too much discretion in how to enforce it, but you're actually saying that if state Supreme Court's decisions are confusing, that's a constitutional violation. No, no, we're not saying that at all, Your Honor. What we're saying is it's the executive's conclusion, without any guidance, with ambiguous guidance at best, with confusing guidance, with what did Justice Fischer call it? He had several great adjectives for that. Even the Supreme Court's majority says difficult guidelines. That's what violates it. All right, and what case are you relying on to say that that demands not just review, judicial review, but de novo judicial review? That's a great question, Your Honor. Strangely enough, in the Friedman case itself, the court did not say that. But the subsequent cases that have interpreted Friedman have all said that. The Bose case, which was cited in my brief, Supreme Court case, Bose speakers, the audio speakers case, Bose Corporation. The Supreme Court said that in First Amendment cases, we review law in fact de novo. And I cite several lower court decisions that say the same thing about Friedman. Professor Henry Monaghan, he wrote the seminal works on all of this that the Supreme Court used in Friedman. And I cite some of his works. He said the same thing. As a matter of constitutional requirement. As a matter of constitutional law. As a matter of First Amendment constitutional law. And that's where due process folded in with the First Amendment prior restraint doctrine. Monaghan was responsible largely for that in his writings. He's the one who folded due process into the First Amendment. I want to wind your argument up. I'm sorry, Your Honor. I'm way over time. I apologize. Thank you. Thank you. We'll hear rebuttal. I appreciate Your Honor's long rebuttal. I know this has gone on for a while, so I'll try to be brief. Just a few quick points. It should have been brought as an as-applied challenge in state court. The as-applied challenge is moot because the initiative was eventually put on the ballot. Yeah, but what happened? It was put on the ballot. One of them passed. And one failed. Right. But the one that passed, doesn't our decision affect what happens to it? No, it was put on the ballot and was enacted. I don't think this court's decision would have any bearing on it. I'm not hearing you. I don't think this court's decision would have any bearing on its continued validity because it was put on the ballot and it did pass. Okay, but the question then is whether it was validly on the ballot. And if we – just a second. If we vacate the injunction, what happens to that – to the initiative that was passed? Someone could challenge it and say that it wasn't properly on the ballot, but that would fail because it was a legislative action. I don't see any basis for holding that it wasn't. The other critical point I want to touch on, this is not – Why isn't this – why isn't it moot then? The as-applied challenge is moot. But he enjoined permanently our entire application of the legislative authority statutes. So if your honors think this is really an as-applied challenge, I agree the whole thing is moot. That would be fine as long as the lower court's injunction is vacated so that we're not bound by it going forward. Okay, and when I asked what was being enjoined, counsel said what was being enjoined was application of the statute to the content of the initiative. What is your understanding of what was enjoined? I frankly don't know. The most likely reading is I think he says you just can't apply these laws at all, so everything has to go on the ballot subject to a post-election challenge. This is not in the record, but I can tell you from our experience, we're constantly getting calls from county boards of election that have no idea what they're supposed to be doing right now. So that's the reason you need a decision by when? We'd like to wrap up all appeals by August 7th, and I do appreciate your honors hearing this on an expedition. And that's because you have to give the word one way or the other to the boards as to – Before the next election. Which is in November of this year. Yeah, I believe that's right. But I know August 7th is the date that we need it by for the next election. But if I can quickly note that the content-based point, he's not challenging the content-based aspect of the law. Page 29 of 30 of the brief says, Schmitt, this is a quote, does not question Ohio's power to define what may be put to the voters through initiatives. In other words, legislative or initiative. Schmitt's claim is that Ohio's gatekeeper law fails because it violates the procedural protections required by the doctrines against prior restraints. In other words, by putting things in mandamus versus giving a direct appeal. That distinct – that part of the law is content-neutral. Every single initiative can only be – you can only challenge the county board's decision through a mandamus proceeding rather than direct an oval appeal. So the only thing actually being challenged is entirely content-neutral. And if there are no further questions, thank you for hearing this on an expedited basis. I have one last question. You had indicated there's a conflict split on whether or not First Amendment applies. Do you believe the Sixth Circuit has ruled on that? I don't. I think the closest they've come is probably CITL, but they didn't rule on it because no one argued that the First Amendment didn't apply. And if you look at Taxpayers United, in that case out of Michigan, which is a challenge to a signature requirement followed by mandamus, the court said that it passed Anderson Burdick because it did not regulate speech. It did not regulate the kinds of speech you engage with in going into – in promoting an initiative. It just regulated whether you could actually get on the ballot. Arguably, that's the same view that Judge Tatel for unanimous D.C. Circuit held and that Judge McConnell for almost unanimous en banc 10th Circuit adopted. Thank you. All right. Thank you for a case well argued on both sides and the cases submitted.